UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

AARON CANTLEY,

                Plaintiff,                Case No. 1:08-cv-1044

v.                                            HON. JANET T. NEFF

JAMES ARMSTRONG et al.,

                Defendants.
_____/

**OPINION**

        This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. Plaintiff originally filed his complaint in the Eastern District of Michigan. On November 6, 2008, that court issued an opinion and order dismissing Defendants K. Sheets, Kelly Washington, Blain Lafler and (unknown) Robbennolt, and transferring Plaintiff's action to this Court on venue grounds. The Eastern District did not consider Plaintiff's claims against the remaining Defendants. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), this Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e©. The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, Plaintiff's action will be dismissed for failure to state a claim.

**Factual Allegations**

Plaintiff is incarcerated in the Chippewa Correctional Facility, but the events giving rise to his complaint occurred while he was incarcerated at the Oaks Correctional Facility (ECF), the Brooks Correctional Facility (LRF) the St. Louis Correctional Facility (SLF)[1] and the Carson City Correctional (DRF). Plaintiff sues Michigan Department of Corrections (MDOC) Prisoner Affairs Manager James Armstrong; MDOC Director Patricia Caruso; ECF Warden Cindy Curtin; ECF Librarian D. Straubel; ECF Assistant Deputy Wardens Synthia Hughes and Dave Pratt; ECF Assistant Resident Unit Managers Gloria Hernandez, (unknown) Schnieber and (unknown) Thomas; ECF Grievance Coordinator (unknown) McDonald; ECF Resident Unit Managers (unknown) Sanders and (unknown) Haske; LRF Warden Mary Berghuis; LRF Deputy Warden R. Smith; LRF Assistant Deputy Warden B. Smith; DRF Warden Thomas Bell; DRF Deputy Warden Tony Trierweiler; and DRF Resident Unit Manager (unknown) Hoffman.

While Plaintiff was incarcerated at DRF at security level II, he was charged with a major misconduct for fighting and was placed in administrative segregation. Plaintiff alleges that following an interview with the Security Classification Committee (SCC), Defendants Trierweiler and Hoffman told Plaintiff that he would be released back to level II at DRF. After the SCC interview, Plaintiff filed four grievances and was confronted by Defendant Hoffman concerning one of the grievances. Within a week after that incident, Plaintiff was transferred to level IV at LRF. Plaintiff claims that he was transferred to LRF, rather than being released back to level II at DRF, in retaliation for filing grievances.

---

[1]The SLF Defendants, K. Sheets, Kelly Washington, Blain Lafler and (unknown) Robbennolt, were dismissed with prejudice by the Eastern District of Michigan. Consequently, this Court will not consider Plaintiff's claims against those Defendants.

When Plaintiff arrived at LRF, he complained about his security level to Defendants Minnerick, Brydon, Fager, Smith and Berghuis, but they failed to take corrective action. Plaintiff also filed a grievance concerning the matter. Plaintiff appealed his grievance to Step III of the administrative grievance process. He alleges that James Armstrong, the Step III respondent, failed to respond to the grievance within the time permitted by policy. Plaintiff further contends that when Armstrong finally responded to the Step III grievance, he failed to take corrective action.

Plaintiff was transferred to SLF and then to ECF. He claims that Defendants interfered with his access to the courts on several occasions during his incarceration at ECF. In December 2007, Plaintiff gave Defendant Hernandez a manilla envelope that contained a rough draft of a motion for relief from judgment that Plaintiff intended to file in his criminal case, along with supporting materials. Plaintiff asked Hernandez to give the envelope to another prisoner who was acting as Plaintiff's "legal writer." About ten days later, Plaintiff learned that his legal writer never received the envelope. Plaintiff immediately sent kites to the librarian, Warden's office and Defendants Hernandez, Schnieber and Hughs informing them of the missing legal documents. Two days later, Defendants Schnieber and Hernandez told Plaintiff that staff was looking for his legal documents. After four or five days, the documents were located and forwarded to Plaintiff's legal writer. Plaintiff's legal writer subsequently completed Plaintiff's motion for relief from judgment.

Plaintiff further claims that during the same time period in which his legal documents were lost, Defendants Schnieber, Haske and Staubel repeatedly denied him writing supplies that he needed to complete his legal pleadings. In addition, Plaintiff claims that Defendant Straubel denied him legal copies while he was at ECF. Plaintiff contends that he needed the copies to properly file pleadings in the state courts regarding his criminal conviction.

In January 2008, while Plaintiff was housed in segregation at ECF, Defendants Thomas and Sanders allegedly refused to seal Plaintiff's legal mail in his presence. Plaintiff filed a grievance complaining of Thomas' conduct. Plaintiff asserts that as punishment for filing grievances, he was moved from segregation Unit 3, which has cable television, to segregation Unit 5, which does not have cable. Plaintiff further claims that prisoners are more quickly released to the general population from Unit 3 than from Unit 5. Plaintiff requested to be moved from Unit 5 to Unit 3, but Defendant Pratt denied the request and refused to release Plaintiff to the general population.

Plaintiff further claims that Defendant McDonald, the grievance coordinator, refused to process Plaintiff's grievances and failed to forward receipts in a timely manner. Finally, Plaintiff asserts that he has been improperly held in administrative segregation since 2005, and has been held beyond the period allowed by state administrative rules, statute and MDOC policy. Plaintiff seeks declaratory and injunctive relief, as well as monetary damages.

## Discussion

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)); *see also Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984). The standard requires that a "complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Glassner v. R.J. Reynolds Tobacco Co.*, 223 F.3d 343, 346 (6th Cir. 2001). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombley*, 127 S. Ct. at 1965;

*Lewis v. ACB Business Serv., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998) (holding that a court need not accept as true legal conclusions or unwarranted factual inferences). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 127 S. Ct. at 1974; *see also United States v. Ford Motor Co.*, 532 F.3d 496, 503 (6th Cir. 2008); *United States ex rel. Bledsoe v. Comty. Health Sys., Inc.*, 501 F.3d 493, 502 (6th Cir. 2007)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

I.     **Supervisory Liability**

Plaintiff fails to make specific factual allegations against Defendants Armstrong, Caruso, Curtin, Berghuis, R. Smith, B. Smith and Bell, other than his claim that they failed to take corrective action or denied his grievances. A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summer v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Plaintiff has failed to allege that Defendants Armstrong, Caruso, Curtin, Berghuis, R. Smith,

B. Smith and Bell engaged in any active unconstitutional behavior.  Accordingly, he fails to state a claim against them.

## II.    **Grievance Coordinator**

Plaintiff also claims that Defendant McDonald, the grievance coordinator, refused to process Plaintiff's grievances and failed to forward receipts in a timely manner.  Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994).  Michigan law does not create a liberty interest in the grievance procedure.  *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994).  Because Plaintiff has no liberty interest at stake, Defendant McDonald's alleged conduct could not violated his due process rights.

## III.    **Access to the Courts**

Plaintiff claims that he was denied access to the courts while he was incarcerated at ECF.  It is well established that prisoners have a constitutional right of access to the courts.  *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners.  *Id.* at 817.  The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.*

at 824-25. An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must demonstrate actual injury to pending or contemplated litigation. *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. "Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc). Moreover, the underlying action must have asserted a non-frivolous claim. *Lewis*, 518 U.S. at 353; *accord Hadix v. Johnson*, 182 F.3d 400, 405 (6th Cir. 1999) (*Lewis* changed actual injury to include requirement that action be non-frivolous). Further, the Supreme Court squarely has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. 353 & n.3). The *Christopher* Court held that, "[l]ike any other element of an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Christopher*, 536 U.S. at 416.

A.     Loss of legal documents

Plaintiff first claims that in December 2007, Defendant Hernandez failed to deliver a manilla envelope containing legal documents to Plaintiff's legal writer. The envelope contained a rough draft of a motion for relief from judgment that Plaintiff intended to file in his criminal case Within approximately two weeks the envelope was located and delivered to the legal writer, who completed Plaintiff's motion for relief from judgment. Plaintiff does not allege that he suffered actual injury as a result of the delay in delivering the envelope of legal materials to his legal writer. Because Plaintiff fails to satisfy the actual injury requirement, his claim must fail. *See Christopher*, 536 U.S. at 416.

B.     Denial of writing supplies

Plaintiff further claims that during the same time period that his legal documents were lost, Defendants Schnieber, Haske and Staubel repeatedly denied him writing supplies that he needed to complete his legal pleadings. Plaintiff's allegations are not sufficient to state a claim. Plaintiff does not allege that the legal pleadings he was preparing concerned a direct criminal appeal, habeas corpus application or civil rights action, nor does he specifically allege any injury that resulted from the alleged denial of writing supplies. Plaintiff, therefore, fails to state a claim.

C.     Denial of legal copies

Finally, Plaintiff claims that Defendant Straubel denied him legal copies while he was at ECF. Plaintiff contends that he needed the copies to properly file pleadings in the state courts regarding his criminal conviction. Plaintiff, however, does not allege that he suffered actual injury to pending or contemplated legal proceedings relating to his criminal conviction a result of

Straubel's alleged refusal to make the copies. Accordingly, Plaintiff failed to allege that Defendant Straubel denied his right of access to the courts.

### IV. **Retaliation**

Plaintiff makes two claims of retaliation in his complaint. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exerciseDecember 22, 2008 of the protected right was a substantial or motivating factor in the Defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

Plaintiff first claims that he was transferred from security level II at DRF to security level IV at LRF in retaliation for filing grievances. Plaintiff alleges that he was charged with a major misconduct for fighting and was placed in administrative segregation. Plaintiff alleges that following an interview with the SCC, Defendants Trierweiler and Hoffman told Plaintiff that he would be released back to level II at DRF. After the SCC interview, Plaintiff filed four grievances and was confronted by Defendant Hoffman concerning one of the grievances. Plaintiff contends that within a week after that incident, Plaintiff was transferred to level IV at LRF. Plaintiff claims that he was transferred to level IV at LRF, rather than being released back to level II, in retaliation for filing grievances.

Plaintiff satisfies the first requirement because the filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Noble v. Schmitt*, 87 F.3d 157, 162 (6th Cir. 1996). An adverse action "is one that would 'deter a person of ordinary firmness' from the exercise of the right at stake." *Thaddeus-X*, 175 F.3d at 396 (quoting *Bart v. Telford*, 677 F.2d 622, 625 (7th Cir. 1982)). With regard to the second requirement, the mere transfer to a different prison, without more, is not an adverse action. *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005). *See, e.g., Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights") (internal quotation marks omitted). However, an increased security level could deter a person of ordinary firmness from exercising his First Amendment rights. *See King v. Zamiara*, 150 F. App'x 485, 493 (6th Cir. 2005). Because Plaintiff was transferred to a higher security level, the Court will assume for purposes of this opinion that he also satisfies the second requirement.

While Plaintiff satisfies the first two requirements for a retaliation claim, his allegations are insufficient to satisfy the third requirement - that the adverse action was motivated, at least in part, by the protected conduct. Plaintiff makes a vague allegation that Defendant Hoffman "confronted" him about one of his grievances a week before his transfer, but he does not allege that Hoffman was involved in the decision to transfer him to LRF. Ostensibly, the SCC made the decision based upon Plaintiff's misconduct for fighting. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory

allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff merely alleges the ultimate fact of retaliation. He has not presented any facts to support his conclusion that Hoffman retaliated against him because he filed a grievance. Accordingly, his speculative allegation fails to state a claim.

Plaintiff also claims that while he was incarcerated at ECF, he was transferred from segregation Unit 3 to segregation Unit 5 in retaliation for filing grievances. He alleges that he filed a grievance against Defendant Thomas when he refused to seal Plaintiff's legal mail in Plaintiff's presence. Plaintiff claims that as punishment for filing the grievance, he was moved from segregation Unit 3, which has cable television, to segregation Unit 5, which does not have cable. Plaintiff further claims that prisoners are more quickly released to the general population from Unit 3 than from Unit 5. While Plaintiff alleges that he was engaged in protected conduct, he fails to satisfy the second two requirements for a retaliation claim. First, the Court does not find that the consequences of moving from one segregation unit to another segregation unit are sufficient to deter a person of ordinary firmness from filing a grievance. Second, Plaintiff's allegation of retaliatory motive is wholly conclusory. Plaintiff asserts that he was transferred in retaliation for filing a grievance again Defendant Thomas. Plaintiff, however, does not allege that Thomas made the decision, or even possessed the necessary authority, to transfer Plaintiff to a different housing unit. Because Plaintiff fails to present any facts to support his conclusion that Thomas retaliated against him for filing a grievance, he fails to state a claim for retaliation.

V.  **Confinement in Administrative Segregation**

Plaintiff alleges that he has been confined in administrative segregation since 2005, and has been held beyond the period allowed by state administrative rules, statute and MDOC policy. Section 1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994). Thus, Defendants' alleged failure to comply with state statute, administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *Spruytte v. Walters*, 753 F.2d 498, 508-09 (6th Cir. 1985); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectable liberty interest). While such confinement could implicate Plaintiff's federal constitutional rights, he does allege that any of the named Defendants are responsible for his continued confinement in administrative segregation. Plaintiff currently is incarcerated at the Chippewa Correctional Facility. Prison officials at that facility, which do not include the named Defendants, are responsible for determining Plaintiff's security level. Accordingly, Plaintiff fails to state a federal claim against the named Defendants arising from his continued placement in administrative segregation.

## Conclusion

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Plaintiff's action will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e©.

The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  For the same reasons that the Court dismisses the action, the Court discerns no good-faith basis for an appeal.  Should Plaintiff appeal this decision, the Court will assess the $455.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless Plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $455.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A Judgment consistent with this Opinion will be entered.


Dated: December 22, 2008         /s/ Janet T. Neff
                                 JANET T. NEFF
                                 United States District Judge